## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Cr. No. 99-10332-MLW |
| | ) | |
| WILLIAM SEDOMA, SR., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

WOLF, D.J.                                           March 11, 2015

## I.    INTRODUCTION

Defendant William Sedoma, a former police detective, is serving a 235 month sentence for conspiracy to distribute marijuana, conspiracy to commit honest services fraud, and ten counts of mail fraud. Sedoma has filed a Motion to Vacate, Set Aside, or Correct His Sentence Under 28 U.S.C. §2255 (the "§2255 Motion"). He alleges that his trial counsel failed to file a timely motion to suppress, which resulted in his conviction on several of the counts against him. On April 17, 2012, Sedoma filed a Motion to Amend his petition. The Motion to Amend seeks to assert the additional claim that his trial counsel failed to adequately advise him about a possible plea bargaining.

For the reasons explained in the Memorandum and Order, the proposed amended claim does not relate to the original claim and, therefore, was not timely filed. With regard to the original claim, assuming, without deciding, that counsel's

performance was deficient, Sedoma has not proven that he was prejudiced. Therefore, both the Motion to Amend and the §2255 Motion are being denied.

II. BACKGROUND

Sedoma was a detective in the Tiverton, Rhode Island Police Department. In October 1999, Sedoma was indicted with several other individuals in connection with a large-scale marijuana distribution operation in Rhode Island and Massachusetts. The operation was headed by Alan Theberge. The indictment alleged that Sedoma repeatedly obtained confidential police information and relayed it to Theberge and his coconspirators to help the drug conspiracy evade detection. See Superseding Indictment (Docket No. 166) at 8-10.

Sedoma's jury trial before Judge Robert Keeton began on January 22, 2001. On the first day of trial, defense counsel, John Verdecchia, Esq., filed a motion to suppress certain documentary evidence seized from Sedoma's desk at the police station pursuant to two federal search warrants. The Judge denied the motion to suppress as untimely and inadequately supported. See Jan. 22, 2001 Tr. at 13:8-13.

On February 23, 2001, the jury returned guilty verdicts on thirteen of the nineteen charges against Sedoma. Judge Keeton sentenced Sedoma to 293 months in prison on the marijuana

2

conspiracy count and 60 months on each of the other counts, to be served concurrently. This sentence was vacated by the First Circuit, which found that the judge had miscalculated Sedoma's sentencing guideline range by failing to consider all of his offenses as a single "group." See United States v. Sedoma, 332 F.3d 20, 25 (1st Cir. 2003).

Judge Keeton recused himself from the resentencing. On November 21, 2006, this court resentenced Sedoma to 235 months in prison on the marijuana conspiracy count and 60 months on each of the remaining counts, to be served concurrently. Sedoma again appealed to the First Circuit, but subsequently voluntarily dismissed the appeal.

On December 15, 2009, Sedoma filed the instant §2255 Motion, which make a single claim: that Mr. Verdecchia had provided constitutionally ineffective assistance by failing to file a timely motion to suppress evidence that had been seized from the desk in Sedoma's office. The government moved to dismiss the §2255 Motion.

On April 17, 2012, Sedoma filed a Motion to Amend his §2255 Motion. He seeks to add a second ineffective assistance of counsel claim. In that claim, Sedoma argues that Mr. Verdecchia's assistance was also ineffective because he had failed to provide Sedoma with adequate advice concerning the

3

benefits of pleading guilty. See Pet'r Mot. to Amend by Adding
Claim (Docket No. 406).

On May 20, 2014, the court ordered the parties to submit
memoranda concerning several issues raised by the §2255 Motion
and his Motion to Amend. See June 23, 2014 Order. The parties
complied with this Order.

III. THE MOTION TO AMEND

Sedoma's Motion to Amend was filed nearly two years after
the §2255 limitations period for Sedoma's conviction expired.
The claim asserted in the Motion to Amend is not related to the
claim in the original §2255 Motion. Therefore, it does not
relate back to the date that the §2255 Motion was filed.
Contrary to Sedoma's contention, the limitations period is not
extended by 28 U.S.C. §2255(f)(3) because the second ineffective
assistance claim does not rely on a "newly recognized"
constitutional right. Accordingly, the Motion to Amend is
untimely and is being denied.

A. Legal Standard

Motions under 28 U.S.C. §2255 are subject to "[a] 1-year
period of limitation." 28 U.S.C. §2255(f). This period of
limitation begins on the latest of several alternative dates:

(1) the date on which the judgment of conviction
becomes final;

. . .

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

. . .

Id.

Amendments to §2255 motions are governed by Federal Rule of Civil Procedure 15. See United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). Accordingly, claims asserted in an amended motion "relate back" to the date of the original motion if they "arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

When applied to §2255 motions, "the Rule 15 'relation back' provision is to be strictly construed." Ciampi, 419 F.3d at 23; Turner v. United States, 699 F.3d 578, 585 (1st Cir. 2012). Claims under §2255 asserted by amendment only "relate back" if they "arise from the 'same core facts,' and [do] not depend upon events which are separate both in time and type from the events upon which the original claims depended." Ciampi, 419 F.3d at 24 (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). When the ground for relief is ineffective assistance of counsel, "the standard cannot be satisfied merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance

5

claim based upon an entirely distinct type of attorney misfeasance." Id.; see also Turner, 699 F.3d at 585.

B.    Analysis

1.    One-Year Limitations Period and "Relation Back"

Judgment against Sedoma was entered on November 21, 2006. Although Sedoma appealed within ten days, he voluntarily dismissed his appeal on April 14, 2009. Section 2255(f)(1) provides that §2255 petitions must be filed within one year from "the date on which the judgment of conviction [became] final." Sedoma's conviction became final on July 14, 2009. See Clay v. United States, 537 U.S. 522, 524 (2003) (conviction becomes final when the time for filing a petition for certiorari expires, which is 90 days the court of appeals enters judgment). Therefore, Sedoma's §2255 one-year limitations period ended on July 14, 2010. The Motion to Amend was not filed until April 17, 2012, nearly two years after expiration of the limitations period.

Sedoma's Motion to Amend does not relate back to his original §2255 Motion. The two motions allege unrelated acts of ineffective assistance that are separated both in time and type. The original motion alleged a failure to file a timely motion to suppress on the first day of trial, while the proposed amended

motion alleges inadequate advice regarding plea bargaining prior to trial. See Turner, 699 F.3d at 585.

## 2. "Newly Recognized" Constitutional Right

Sedoma contends that the period of limitation is extended by 28 U.S.C. §2255(f)(3) because effective assistance of counsel in plea bargaining is a right that was "newly recognized" by the Supreme Court in 2012, in Lafler v. Cooper, 132 S. Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012). As indicated earlier, §2255(f)(3) extends the statute of limitations for rights that have "been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. However, the right to effective assistance of counsel in plea bargaining addressed in Lafler and Frye is not a "newly recognized" right under §2255(f)(3).

The First Circuit has stated, in the context of a successive petition under §2255(h)(2)[1] rather than §2255(f)(3), that "neither Frye nor Cooper established a 'new rule of constitutional law.'" Pagan-San Miguel v. United States, 736 F.3d 44, 45 (1st Cir. 2013) (per curiam) (quoting In re Liddell, 722 F.3d 737, 738 (6th Cir. 2013)). The First Circuit explained

---

[1] §2255(h)(2) requires that successive petitions under §2255 present "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

that, in recognizing the right to effective assistance of counsel in plea bargaining, the Supreme Court "merely applied the Sixth Amendment right to effective assistance of counsel according to the test articulated in Strickland v. Washington, 466 U.S. 668, 686 (1984), and established in the plea-bargaining context in Hill v. Lockhart, 474 U.S. 52 (1985)." Id. (quoting Buenrostro v. United States, 697 F.3d 1137, 1140 (9th Cir. 2012)). The reasoning of Pagan-San Miguel concerning §2255(h)(2) is equally applicable to §2255(f)(3). Therefore, the court concludes that Frye and Cooper did not create a "newly recognized" right. See 28 U.S.C. §2255(f)(3); see also United States v. Crisp, 573 F. App'x 706, 708 (10th Cir. 2014) (holding that these decisions did not create "newly recognized" rights under §2255(f)(3)).

Accordingly, the period of limitations for Sedoma's Motion to Amend is not extended by §2255(f)(3) because it does not rely on any "newly recognized" constitutional right. The Motion to Amend was filed after the one-year limitations period expired and the newly asserted claim does not relate back to the original §2255 Motion. Therefore, Sedoma's Motion to Amend is being denied as untimely.

IV. THE ORIGINAL §2255 MOTION

In the original §2255 Motion, Sedoma argues that his counsel was ineffective for failing to file a timely motion to suppress evidence that was obtained from the desk in Sedoma's office at the Tiverton police station. The evidence was obtained pursuant to two search warrants, which Sedoma contends were invalid. However, even if the evidence seized from Sedoma's office had been excluded, there was still substantial evidence to support each count on which Sedoma was convicted. The record, therefore, establishes that Sedoma was not prejudiced by his counsel's allegedly deficient performance. Accordingly, his §2255 Motion is being denied without an evidentiary hearing.

A. Legal Standard

1. Review Under 28 U.S.C. §2255

28 U.S.C. §2255 provides a federal prisoner with a means to collaterally attack her sentence. As the First Circuit has explained:

28 U.S.C. §2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'

Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994)

(quoting Hill v. United States, 368 U.S. 424, 426-27 (1st Cir.

1994)).

Rule 2(b) of the Rules Governing Section 2255 Proceedings

requires that a motion "(1) specify all the grounds for relief

available to the moving party; [and] (2) state the facts

supporting each ground . . . ."

The court may either summarily dismiss a prisoner's §2255

claim or grant an evidentiary hearing to determine if it is

meritorious. 28 U.S.C. §2255(b) provides:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. §2255(b).

The First Circuit elaborated the test for granting an

evidentiary hearing in a §2255 proceeding in United States v.

McGill, 11 F.3d 223 (1st Cir. 1993). As the First Circuit

wrote:

When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. See Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. [1978]), cert. denied, 439 U.S. 834 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must

take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

Id. at 225-26 (some citations omitted); see also United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990).

## 2. Ineffective Assistance of Counsel

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland, 466 U.S. 668, 687 (1984)); see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

11

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. "The defendant, as a result, must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Phoenix II, 233 F.3d at 81 (internal citations omitted); see also Prou v. United States, 199 F.3d 37, 47-48 (1st Cir. 1999); Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).

As to the "prejudice" prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Porter v. McCollum, 558 U.S. 30, 452 (2009) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence

12

in the outcome." Strickland, 466 U.S. at 694; see also Peralta, 597 F.3d at 79-80.

"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient." Gonzalez-Soberal v. United States, 244 F.3d at 273, 277-78 (1st Cir. 2001).

## B. The Motion to Suppress

As explained earlier, Sedoma alleges that his counsel was ineffective in failing to file a timely motion to suppress the evidence seized from Sedoma's office pursuant to two search warrants. Sedoma's counsel filed a motion to suppress that evidence on the first day of trial.[2] Judge Keeton denied the motion because it was untimely and inadequately supported. See Jan. 22, 2001 Tr. at 13:8-13.

The first warrant at issue authorized investigators to seize a folder marked "Club Changes" from Sedoma's office at the police station. See Jan. 22, 2001 Tr. at 11:3-7; Dec. 21, 1999

---

[2] Sedoma's counsel twice indicated to Judge Keeton that he had been "ambivalent" about filing the motion to suppress and ultimately filed it because he preferred to "err on the side of caution." See Jan. 22, 2001 Tr. at 6.

13

Search Warrant (Docket No. 404, Ex.B). The second warrant authorized investigators to search Sedoma's office for anything of evidentiary value relevant to this case. See Feb. 13, 2001 Tr. at 175:5-9. Sedoma contends that these warrants were invalid because they were not obtained until after the Chief of Police unlawfully entered his locked office and discovered the "Club Changes" folder.

The evidence that the motion sought to suppress included Trial Exhibit 6-A (a note with the registration number to an undercover vehicle), see Jan. 24, 2001 Tr. at 100:22-101:4; Exhibit 17 (registration inquiry), see Jan. 24, 2001 Tr. at 140:7-12; Exhibits 74-B (license and criminal history check), 74-F (criminal record), 74-G (license check), 74-H (license query), see Feb. 13, 2001 Tr. at 145:13-155:17, 74-I (registration query), id. at 165:7-25, 74-J (registry check), id. at 167:22-168:13, and 74-S (activity report), see Feb. 13, 2001 Tr. at 183:9-16.

C. Analysis

1. Concurrent Sentences Doctrine

Under the concurrent sentence doctrine, the existence of one valid conviction "make[s] unnecessary the review of other convictions when concurrent sentences have been given, provided there is no adverse collateral consequence to not reviewing the

14

concurrent sentence." United States v. McHatton, 16 F.3d 401 (1st Cir. 1994). However, in Ray v. United States, the Supreme Court held that the fact that a defendant was required to pay a \$50 special assessment on each count of conviction meant that the appellate court was required to review each count of conviction, even if the amount of time that the defendant would serve in would not be affected by overturning the conviction on any particular count. See 481 U.S. 736, 737 (1987).

In sentencing Sedoma, this court imposed a mandatory \$100 special assessment for each count of conviction. Even though Sedoma was sentenced to concurrent prison sentences, each conviction involves an independent \$100 adverse consequence. The court must, therefore, review each count of conviction that could have been affected by the motion to suppress, even if vacating the conviction on that count would not affect Sedoma's overall prison sentence. See id.

Sedoma only challenges Count One, which charged Conspiracy to Possess with Intent to Distribute Marijuana. However, the court finds that the evidence encompassed by the motion to suppress is also relevant to Count Four, Conspiracy to Commit Offenses Against the United States, and Count Eighteen, Wire Fraud. The court is addressing separately each conviction to which the evidence encompassed by the motion was relevant.

15

## 2. Ineffective Assistance of Counsel Claim

As explained earlier, Sedoma is entitled to habeas relief only if he can establish both that his counsel's performance was not reasonably effective and that this ineffectiveness was prejudicial. See Strickland, 466 U.S. at 694-99. In this case, it is permissible and most appropriate to address the prejudice prong first. See Gonzalez-Soberal, 244 F.3d at 277-78.

"[W]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). In analyzing whether Sedoma was prejudiced by counsel's failure to file the motion to suppress, the court assumes, without deciding, that the motion to suppress provided a meritorious Fourth Amendment claim. Nevertheless, there was substantial evidence in addition to that seized from Sedoma's office that supported the jury's finding that Sedoma was guilty of each of the counts of conviction. In view of this additional evidence, there is not a reasonable probability that but for counsel's alleged deficient performance the result of the trial would have been different. See Porter, 130 S. Ct. at 452.

Therefore, §2255 Motion is being denied without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

### a. Count One: Conspiracy to Possess with Intent to Distribute Marijuana

In Count One, Sedoma was convicted of participating in a conspiracy to distribute marijuana in violation of 21 U.S.C. §846. He attacks the weight of the remaining evidence against him, arguing that it largely consisted of testimony given by "convicted drug dealers and convicted felons", some of whom had cooperation agreements with the government. However, as explained below, the government presented extensive evidence, including the consistent and corroborating testimony of many witnesses, that tended to show that Sedoma aided a group of drug dealers by disclosing confidential police information to them. Sedoma contends that the evidence seized from his office was necessary to establish certain alleged overt acts

As indicated earlier, contrary to Sedoma's contentions, even if the motion to suppress had been granted, there is no "reasonable possibility" that the jury would have found that Sedoma was not guilty of participating in the drug conspiracy. See Strickland, 466 U.S. at 694. As the jury was instructed, in order to find Sedoma guilty of the alleged conspiracy, the jury was required to find that the government proved beyond a reasonable doubt that: (1) a conspiracy existed to accomplish a

common and unlawful plan to distribute marijuana; and (2) Sedoma willfully joined that conspiracy. See First Circuit Jury Instruction for 21 U.S.C. §846.

As Sedoma recognizes, the evidence encompassed by the motion to suppress was primarily relevant to overt acts in furtherance of the conspiracy. Unlike most types of criminal conspiracy, in order to convict a defendant of a drug conspiracy, the government need not prove any overt act. See United States v. Shabani, 513 U.S. 10, 11 (1994). The district court properly instructed the jury on this point. See Feb. 20, 2001 Trial Tr. at 156.

Furthermore, the government presented substantial evidence, unrelated to the evidence encompassed by the motion to suppress, that Sedoma was a knowing and willful participant in the conspiracy. For example, Trooper Scott Warmington and Detective James Dougherty, who previously worked for the Tiverton Police Department, testified about how they determined that Sedoma was assisting the drug conspiracy. Dougherty testified that he informed Sedoma that a controlled delivery would be occurring in Tiverton and invited him to participate. See February 5, 2001 Tr., at 47:23-59:23. Sedoma twice asked him for the address of the controlled delivery. See id. at 59:24-60:20. Trooper Warmington testified that the number of people who knew about

the controlled delivery was intentionally limited. See Jan. 25, 2001 Tr. at 42:11-45:14. The telephone records showed that twelve minutes after his two telephone conversations with Detective Dougherty, Sedoma called a store that was run by members of the conspiracy, Edward Piszcz and Dominick Plourde. See id. at 53:16-54:19, Ex.23.

In addition, there was substantial testimony that Sedoma informed Theberge about an attempted controlled buy by the Tiverton Police on January 18, 1996. Theberge testified that Sedoma called his house to warn him of the controlled delivery, and he paid Sedoma $1000 for that information. See Feb. 5, 2001 Tr. at 211:1-214:7. Theberge's testimony was corroborated by the testimony of five other witnesses, including three law enforcement officers. Greg Beaudoin, a member of the conspiracy, testified that Theberge warned him about the January 18, 1996 controlled delivery, and that he warned co-conspirator Keith Martin. See Feb. 1, 2001 Tr. at 28:7-29:7. Martin, a low level member of the conspiracy, testified that Beaudoin called to warn him not to accept the package because he "ha[d] friends that let [him] know things." See id. at 12:8-20,14:3-10. Alton Conn, the Tiverton Police Chief on January 18, 1996, testified that the only people who knew about the controlled delivery were George Arruda, Troopers Kaminski, Ruest, and Sedoma, and the

19

members of the Tiverton Police Department. See id. at 66:14-
67:25. Troopers Kaminski and Ruest testified that Sedoma knew
about the about the controlled delivery, and that others
involved did not share information about the delivery. See id.
at 99:1-100:20,114:4-115:9.

Finally, multiple members of the conspiracy, including
Piszcz, Reagan Quinn, Jim Silvia, and the leader of the
conspiracy, Theberge, gave consistent testimony about Sedoma's
participation in the conspiracy. These co-conspirators
testified that Theberge paid Sedoma for confidential law
enforcement information. Theberge testified that Sedoma agreed
to protect the drug organization and that Theberge paid Sedoma
on multiple occasions for his help. See Feb. 5, 2001 Tr. at
215:3-219:6, 231:5-19, 233:10-234:6. Piszcz testified that
Theberge introduced Sedoma to him and, subsequently, Piszcz
repeatedly paid Sedoma for his assistance protecting the drug
distribution organization. Piszcz further testified that Sedoma
gave him a gun. See Feb 2, 2001 Tr. at 49:9-22, 51:2-58:22.
Quinn testified that, with respect to a failed control delivery
on January 18, 1996, Theberge told Quinn that "Sedoma . . . got
word that they knew the package was coming, so we weren't going
to accept." See Feb. 9, 2001 Tr. at 97:8-12.

20

The testimony of the co-conspirators was corroborated by the telephone records, which reflected 288 phone calls from Sedoma to Theberge. See Jan. 25, 2001 Tr., Ex. 37. It was further corroborated by entries in Sedoma's address book, seized incident to his arrest, listing telephone or pager numbers for Plourde, Silvia, Theberge, and several individuals to whom members of the conspiracy delivered drugs. See Jan 25, 2001 Tr., Ex. 41.

As Sedoma asserts, the alleged co-conspirators who testified against him were convicted felons who received benefits for their cooperation with the government and arguably had an incentive to testify falsely. Nevertheless, the substantial consistency of their testimony, the testimony of the law enforcement officers who had no reason to lie, and the telephone records not implicated in the motion to suppress, provided formidable corroboration of the cooperating witnesses' testimony and powerful evidence of Sedoma's involvement in the alleged drug conspiracy. Although the evidence subject to the motion to suppress provided further corroboration, Sedoma has not shown that there is a reasonable probability that he would not have been convicted on the drug conspiracy charge if the motion to suppress had been timely filed and granted. Rather, the court is confident that he would have been convicted on that

21

charge even if the evidence seized from his office had been suppressed. Therefore, Sedoma has not proven his ineffective assistance of counsel claim concerning the drug conspiracy charge. See Strickland, 466 U.S. at 694; Porter, 130 S. Ct. at 452.

### b. Count Four: Conspiracy to Commit Offenses Against the United States

On Count Four, Sedoma was convicted of knowingly and willfully conspiring to defraud taxpayers of his fair and honest services. See Third Superseding Indictment at 7. The indictment alleged that Sedoma provided confidential law enforcement information and other specialized assistance to Theberge and his co-conspirators in exchange for cash payments and other benefits. The indictment alleged fourteen overt acts, lettered "a" through "n," that Sedoma or other members of the conspiracy allegedly committed in furtherance of the conspiracy.

In order to find Sedoma guilty of this count, the jury was required to find that: (1) the agreement specified in the indictment to commit honest services fraud existed between at least two people; (2) Sedoma willfully joined in that agreement; and (3) one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy. see United States v. McDonough, 727 F.3d 143, 158-59 (1st Cir. 2013).

As discussed earlier with respect to Count One, even without the evidence encompassed by the motion to suppress, there was extensive evidence showing that Sedoma knowingly and willingly participated in the drug conspiracy. All of the evidence discussed earlier tended to prove that Sedoma's role in the conspiracy was to provide confidential law enforcement information to the drug conspirators. This conduct constitutes the honest services fraud with which Sedoma was charged in Count Four.

The evidence that Sedoma sought to suppress represented a significant component of six of the fourteen overt acts included in Count Four. The evidence did not relate to the four overt acts, lettered "a" through "d," that alleged Sedoma tipped off Theberge about the January 18, 1996 controlled buy. See Superseding Indictment. Again, there was extensive evidence permitting the jury to find that Sedoma told Theberge about the January 18, 1996 controlled buy.

In addition, the jury found Sedoma guilty of mail fraud in each of Counts Five through Seventeen of the Superseding Indictment. These counts, which involved shipping drugs by interstate mail in violation of 18 U.S.C. §1371, constituted overt act "n" in furtherance of the honest services fraud conspiracy, and are unrelated to the evidence seized from

Sedoma's office. Therefore, even without the evidence seized from Sedoma's office, there is no reasonable probability that the jury would not have found Sedoma not guilty on Count Four. See Strickland, 466 U.S. at 694.

### c. Count Eighteen: Wire Fraud

Count Eighteen charged Sedoma with committing wire fraud in violation of 18 U.S.C. §1343. It alleged that Sedoma ran a computer check on Trooper Warmington's undercover license plate (plate 357-HVN) on March 25, 1997, in furtherance of the drug conspiracy. To prove that Sedoma was guilty of wire fraud, the government had to prove: (1) Sedoma knowingly and willingly participated in a scheme or artifice to defraud with the specific intent to defraud; and (2) he used interstate wire communications in furtherance of the scheme. See United States v. Denson, 689 F.3d 21, 24 (1st Cir. 2012).

The only evidence involved in the motion to suppress relevant to this count was a note found in Sedoma's desk that had Trooper Warmington's undercover license plate number on it. See Jan. 24, 2001 Tr., Ex.6-A. While this provided strong circumstantial evidence that Sedoma searched for the license plate, there was substantial additional evidence to prove that Sedoma received the license plate number from Theberge and

searched it in the computer database in furtherance of the conspiracy. That evidence includes the following.

Three members of the conspiracy, Piscz, Theberge, and Reagan, testified that they were together on March 25, 1997, at a restaurant, when Theberge asked Piszcz to write down Trooper Warmington's license plate number. See, e.g., Feb. 2, 2001 Tr. at 65:2-67:22 (Piszcz testifying); Feb. 7, 2001 Tr. at 44:19-45:16 (Theberge testifying); Feb. 9, 2001 Tr. at 104:10-23 (Reagan testifying). They further testified that Theberge later called Sedoma to have him search for the plate on the law enforcement database. See Feb. 2, 2001 Tr. at 69:21-70:1 (Piszcz testifying); Feb. 7, 2001 Tr. at 46:11-50:19 (Theberge testifying); Feb. 9, 2001 Tr. at 104:24-105:9, 106:10-107:3 (Reagan testifying). Theberge testified that Sedoma informed him that the search of the license plate came back "blank." See Feb. 7, 2001 Tr. at 51:6-11(Theberge testifying). Piscz and Reagan testified that Theberge told them that Sedoma said the registration came back "blank." See Feb. 2, 2001 Tr. at 68:8-14 (Piszcz testifying); Feb. 9, 2001 Tr. at 107:3-19 (Reagan testifying).

The co-conspirators' testimony is corroborated by records which establish that somebody at the Tiverton Police Department ran a search for Trooper Warmington's license plate at 6:25 p.m.

on March 25, 1997. See Jan. 24, 2001 Tr., 100:7-12, Ex. 5. At trial, Trooper Warmington testified that the search for the registration would not have revealed his plate number. See Jan. 24, 2001 Tr. at 100:13-19; Jan. 26, 2001 Tr. at 97:15-98:10. Therefore, there was extensive evidence showing that Sedoma searched for Trooper Warmington's license plate number on the computer on March 25, 1997, as charged in Count Eighteen.

All of the foregoing evidence supported a finding that he searched for the plate at Theberge's request, in furtherance of the drug distribution conspiracy. As with Counts One and Four, there is no reasonable probability that the jury would have found that Sedoma was not guilty of Count Eighteen if the evidence seized from his office had been excluded. See Strickland, 527 U.S. at 289-90. In view of the overwhelming evidence against Sedoma that the government presented, the jury's guilty verdict remains "worthy of confidence." See id. Because the record refutes the claim that Sedoma was prejudiced by his attorney's failure to file the motion to suppress, his §2255 Motion is being denied without an evidentiary hearing. See McGill, 11 F.3d at 225-26.

VI. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the court must "issue or deny a certificate of

appealability [('COA')] when it enters a final order adverse to the applicant." To receive a COA, a petitioner must make "a substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(3). In other words, he must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

None of Sedoma's claims allege a plausible violation of a constitutional right. Therefore, the court is denying a Certificate of Appealability on all claims. Sedoma may seek a COA from the Court of Appeals for the First Circuit. See §2255 Rule 11(a).

VII. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Sedoma's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 397) is DENIED.

2. Sedoma's Motion to Amend by Adding Claim (Docket No. 406) is DENIED.

3. Sedoma's Request for an Evidentiary Hearing (Docket No. 405) is DENIED.

4. A Certificate of Appealability is DENIED for all claims.

UNITED STATES DISTRICT JUDGE